# Exhibit A

# STATE OF NORTH CAROLINA

_____Mecklenburg_____ County

File No.

20-CVS- 1224

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>DEEPHAVEN MORTGAGE, LLC | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| *Name Of Defendant(s)*<br>RONALD KRUEGER | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| RONALD KRUEGER<br>330336 EMBASSY AVENUE<br>TEMECULA, CA 92592 | |

⚠️ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
**¡NO TIRE estos papeles!**
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* | *Time* | |
|---|---|---|---|
| Brian L. Church<br>Robinson, Bradshaw & Hinson, P.A.<br>101 N. Tryon Street, Suite 1900<br>Charlotte, North Carolina 28246 | 1-15-2020 | 3:22 | ☐ AM ☒ PM |
| | *Signature*<br>Emily Brass | | |
| | ☒ *Deputy CSC* | ☐ *Assistant CSC* | ☐ *Clerk Of Superior Court* |

| | *Date Of Endorsement* | *Time* | |
|---|---|---|---|
| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ AM ☐ PM |
| | *Signature*<br>/ | | |
| | ☐ *Deputy CSC* | ☐ *Assistant CSC* | ☐ *Clerk Of Superior Court* |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | RETURN OF SERVICE |
|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CIVIL ACTION NO: 20-CVS- 1224

DEEPHAVEN MORTGAGE, LLC,

Plaintiff,

v.

RONALD KRUEGER,

Defendant.

**VERIFIED COMPLAINT FOR
INJUNCTIVE RELIEF AND MOTION
FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

Plaintiff alleges as follows:

## INTRODUCTION

1.     This action arises from Defendant Ronald Krueger's ("Krueger") breach of his confidentiality agreement with his former employer, Plaintiff Deephaven Mortgage, LLC ("Deephaven").   Krueger has violated this agreement by removing from Deephaven substantial amounts of confidential information before and leading up to his voluntary resignation. Immediately following his resignation, Krueger accepted employment with Recovco Mortgage Management, LLC d/b/a Sprout Mortgage ("Sprout") in order to lead a new segment of Sprout's business that is directly competitive with the business in which Krueger worked at Deephaven. Krueger's misappropriation of Deephaven's information appears calculated to allow Krueger to duplicate Deephaven's business—using Deephaven's client lists, proprietary information and pricing strategies—for Sprout's new business segment.

2.     Deephaven is a leading provider of private-capital liquidity for non-qualified mortgage loans—loans made responsibly by third-party financial institutions to borrowers who are unable to obtain a traditional government-financed mortgage because of many factors, including loan size or income source.  Deephaven was founded in 2012 to help rebuild the non-government

12767195

mortgage market and to help provide financing to the millions of credit-worthy borrowers who had been locked out of the mortgage market by tightening liquidity and lending standards. In many cases Deephaven purchases these non-qualified mortgage ("non-QM") loans from third-party clients and either sells or securitizes those loans.

3. Defendant Krueger worked for Deephaven between January 2, 2018 and December 12, 2019 as a Vice President of Client Development. In his role with Deephaven, as detailed below, Krueger was responsible for growing correspondent lender relationships between Deephaven and mortgage originators—including some of Deephaven's biggest and most profitable existing client relationships. He had access to a wide array of its confidential business information, sensitive client information, methodologies, techniques and sales practices. Before his employment with Deephaven, Krueger had no experience in direct sales with correspondent lenders and brought with him to his employment no book of business or ongoing client accounts.

4. In connection with his employment by Deephaven, Krueger agreed in a written Correspondent Sales Compensation Plan (the "Agreement") that he would use Deephaven's confidential information only for performance of his business role with and obligations owed to Deephaven and would not otherwise disclose, transfer, duplicate or reproduce the confidential information (the "Confidentiality Covenant"). Krueger further agreed that he would not, during his employment and for a period of six (6) months thereafter, solicit or accept business related to the purchase of non-QM loans from any of Deephaven's prospective or actual customers (a) whom he covered as clients or (b) about which he obtained or had access to confidential information and that such restrictions would apply to (c) all of Deephaven's prospective or actual customers should he misappropriate the company's confidential information (the "Non-Solicit Covenant").

5.     In the weeks prior to his voluntary resignation from Deephaven on December 12, 2019, Krueger accessed and emailed to his personal email account a number of sensitive Deephaven documents.  Such documents included company-wide lists of clients and contact information, loan originators, and their contact information and other valuable client information; loan pool bids and pricing that was proprietary to Deephaven, including supporting bid tapes; detailed information concerning Deephaven's current sales pipeline reports and production forecasts for 2020 regarding acquisition volume and Deephaven's actual production in 2019; seller scorecards containing sensitive information, unique to Deephaven, about lender performance; and extensive notes from Deephaven clients reflecting confidential client meetings, communications and sales strategies.  Deephaven has discerned no legitimate business purpose for Krueger's acquisition and disclosure of this information and Krueger has provided no explanation for his having done so.  Rather, the pattern of Krueger's stockpiling of Deephaven documents in the weeks prior to his departure demonstrates that he took them in anticipation of using them in connection with his job at Sprout.

6.     Krueger is now working as Senior Vice President Correspondent Lending at Sprout Mortgage.  This position is a new position at Sprout and, upon information and belief, is designed to oversee a new business unit at Sprout engaged for the first time in direct relationships with correspondent lenders rather than wholesale mortgage brokers—just as Krueger did in his role with Deephaven.  In this position Krueger will perform similar functions as he did while employed with Deephaven and will have the opportunity, if not obligation, to use the confidential business information, methodologies and techniques he learned at Deephaven.  Through this new business segment, Deephaven and Sprout Mortgage will compete directly to purchase non-QM residential loans and in many cases solicit and obtain business from the same customers.

7.      In this action, Deephaven seeks a temporary restraining order and preliminary and permanent injunctive relief to restrain Krueger and those acting in concert with him from further unlawful conduct in violation of the Confidentiality Covenant and the Non-Solicitation Covenant, in addition to recovery of all damages caused by Krueger's misconduct.

## PARTIES AND JURISDICTION

8.      Plaintiff Deephaven is a Delaware limited liability company with its principal offices and operations located in Charlotte, North Carolina.

9.      Defendant Ron Krueger is believed to be a resident of California. As described in more detail below, he was employed by Deephaven from January 2, 2018 to December 12, 2019. In connection with his employment by Deephaven, Krueger regularly travelled to and worked from Deephaven's offices in North Carolina. Deephaven does not maintain offices in California, and Krueger elected to maintain his residence in California during the term of his employment while working for a North Carolina limited liability company.

10.     Krueger travelled to and attended his initial employment training at Deephaven's headquarters in North Carolina in early 2018.

11.     At least on a quarterly basis throughout the term of his employment, Krueger travelled to North Carolina to attend meetings, training and to work from Deephaven's Charlotte headquarters.

12.     While he was working outside North Carolina, Krueger interacted with and relied upon Deephaven's client, operational and technical support resources which are located exclusively in North Carolina.

13.     All of the transactions that Krueger facilitated in his executive sales role were facilitated through Deephaven's North Carolina office.

## KRUEGER'S EMPLOYMENT AGREEMENT

14.     In connection with his participation in a new incentive compensation plan provided by Deephaven, Krueger entered into the 2019 Correspondent Sales Compensation Plan and the Supplemental Policies thereto, which are attached to this Complaint as Exhibit 1.

15.     In the Confidentiality Covenant included in the Supplemental Policies to the Agreement, Krueger promised to use Deephaven's Confidential Information only for performance of his business role with and obligations owed to Deephaven and would not disclose, transfer, duplicate or reproduce the Confidential Information in any form other than as necessary for completion of tasks in his role with Deephaven.

16.     As used in the Agreement, Confidential Information means information about the Company's business, its products, sales, vendors, suppliers, financial and business operations, its pricing and incentives, underwriting guidelines, strategic and marketing plans, accounts, customer lists, customer data and information (including personally identifiable information), the Company's dealings and relationships with its prospective and actual customers and its employees, processes, methods, training and educational materials, marketing materials, employee compensation (including the Agreement), technology and applications, work-product and all other information not generally known or readily ascertainable that has commercial value to the Company and that gives the Company advantage over competition.

17.     In the Non-Solicit Covenant in the Agreement Kruger agreed that he would not, for six (6) months after his separation, directly or in association with others, solicit, attempt to solicit, or accept business related to the sale or purchase of non-QM residential mortgage loans from any of Deephaven's prospective or actual customers with whom he, at any time during the one (1) year period prior to cessation of his employment, (a) covered as his clients; (b) had any substantial or

5

non-incidental contact or communications, or (c) about which he obtained or had access to Confidential Information. Further, Krueger agreed that should he misappropriate any Confidential Information or information related to Deephaven's prospective or actual customers, he would be prohibited from soliciting or accepting business from any of the Deephaven's prospective or actual customers during the six-month period following his separation from employment.

## KRUEGER'S EMPLOYMENT WITH DEEPHAVEN

18.     Between January 2018 and December 2019, Krueger worked on behalf of Deephaven's client contacts, client development, and loan purchase and pricing strategies, with responsibilities and access to the company's Confidential Information. In his position, Krueger became privy to Deephaven's proprietary Confidential Information regarding its products, sales, vendors, suppliers, financial and business operations, its pricing and incentives, underwriting guidelines, strategic and marketing plans, accounts, customer lists, forecasts, private customer feedback and communications, and customer data and information.

19.     As Vice President of Client Development, Krueger was responsible for significant aspects of Deephaven's business. His duties in that position included growing existing correspondent lending relationships, expanding his existing client base, preparing plans to identify and develop potential clients within his assigned territory, and participating in Deephaven's program development and product prioritization.

20.     When Deephaven hired Krueger, it provided him an extensive existing "book of business" including ongoing and lucrative relationships with many correspondent lenders. Krueger had no existing business relationships with correspondent lenders at the time he was hired because he had historically worked only with mortgage brokers. Though Krueger developed some additional client relationships during his tenure with Deephaven (which was part of his job

description and for which he was compensated), the vast majority of Krueger's production and compensation originated from the relationships Deephaven provided to him.

21.    Through his work at Deephaven, Krueger became privy to Deephaven's Confidential Information regarding Deephaven's clients, its operational aspects and the purchase and sales strategies it employed.

22.    Because of the intensely competitive nature of the correspondent lending industry, Deephaven closely guards this sensitive and proprietary Confidential Information. Deephaven's protects its Confidential Information by a secure computer network, accessible only to a limited number of employees through password authentication and only for Deephaven's business purposes, and through confidentiality agreements and policies with its employees. Deephaven's Confidential Information is not available to the general public or Deephaven's competitors.

23.    Deephaven also invests substantial time and resources into training its employees in its processes, methodologies and techniques. Because client development and relationships are a critical aspect of Deephaven's competitive advantage, Deephaven takes steps to protect its relationships with its clients, including through use of the Non-Solicit Covenant. Taking such pro-active steps to retain its client relationships, information and methodologies allows Deephaven to ensure that employees like Krueger cannot exploit the client relationships, information and training that Deephaven provides them during their employment for the benefit of a competitor immediately following their separation from employment.

24.    Furthermore, prohibiting the solicitation of Deephaven clients by its former employees protects Deephaven against the irreparable harm to its ongoing operations that can be caused by the wrongful exploitation of the resources and expenditures made by Deephaven to identify, develop and retain its specialized client base.

## KRUEGER'S UNLAWFUL CONDUCT

25.     In early December 2019, Krueger informed Deephaven of his intent to voluntarily resign his employment and to begin his employment with Sprout thereafter. In his communications with Deephaven about his resignation, Krueger assured Deephaven that he had not misappropriated any of its Confidential Information and that he would abide by the Non-Solicit Covenant. Krueger's employment formally ended on December 12, 2019

26.     Following Krueger's departure, Deephaven conducted a review of Krueger's email account and electronic devices to ensure that Krueger had complied with Deephaven's policies, procedures and agreements regarding the use of its Confidential Information.

27.     As part of its review, Deephaven identified numerous instances in which Krueger emailed to his personal email address, rfkinnb@gmail.com, sensitive Deephaven documents containing Confidential Information. A non-exhaustive list of such instances includes:

(a)     On multiple occasions between October and early December 2019, Krueger emailed to his personal account electronic copies of all of Deephaven's client contact information, including client names, status, form of product/loan delivery, and contact information.

(b)     On multiple occasions between October and early December 2019, Krueger emailed to his personal account electronic copies of Deephaven's bid tapes, which contains extensive loan level data (including personally identifiable information) from which Deephaven's bid and pricing strategies can be derived.

(c)     On November 22, 2019, Krueger emailed to his personal account electronic copies of Deephaven's securitization research and detail (including named originators) that Deephaven had paid to acquire and was not publicly available.

(d)     On November 18, 2019, Krueger emailed to his personal account three different emails to capture Deephaven's list of loan originators and their contact information from Deephaven's SalesForce software system.

(e)     On November 13, 2019, Krueger emailed to his personal account electronic copies of segmentation slides and seller data and scorecards, which are used to evaluate the performance of Deephaven clients and contain proprietary information and analysis;

(f)     On multiple occasions between October and early December 2019, Krueger emailed to his personal account electronic copies of Deephaven's loan pipeline and 2020 production forecasts for all of the Deephaven clients for which Krueger was responsible, which contained proprietary information about Deephaven's transactions.

(g)     On October 28, 2019, Krueger compiled and emailed to his personal account electronic copes of detailed notes from all of Deephaven's client meetings at the Mortgage Bankers Association Meeting, including notes and sales strategies for clients that Krueger did not serve and confidential documents provided to Deephaven by its clients at the meeting.

28.     Throughout his employment with Deephaven, Krueger's email records indicate that he did not typically or regularly email Deephaven's Confidential Information to his personal email account—nor, because of Deephaven's secure remote access systems, would he have a reason to do so. Instead, Krueger's email records show that he began emailing numerous documents containing Deephaven's Confidential Information in October 2019, shortly after he attended the Mortgage Bankers Association annual meeting. Upon information and belief, it was at or shortly after that meeting that Krueger began contemplating and discussing competitive employment with Sprout Mortgage. On October 24, 2019, Krueger emailed from his personal account to his

Deephaven account the sales guide for Sprout Mortgage, evidencing his contemplation or discussion of employment with Sprout Mortgage.

29.     Part of Sprout Mortgage's new business operations appear to involve a strategy of "correspondent" lending that is identical to the operations Deephaven conducts and for which Krueger shared responsibility while at Deephaven. Like Deephaven, Sprout Mortgage purchases and pools non-QM loans from third-party lenders ("correspondent" lenders) for securitization and then sells those securities to investors.

30.     As a Senior Vice President for Correspondent Lending, Krueger will necessarily be calling on the same types of third-party lenders of non-QM loans with which he interacted at Deephaven. In fact, there are likely fewer than 400 widely recognized and reliable third-party lenders of non-QM loans in the United States. Krueger's misappropriation of Deephaven's Confidential Information signals his intent to call on his former clients and those of Deephaven.

31.     On December 19, 2019, through counsel, Deephaven informed Krueger of the allegations in this Complaint and its insistence that Krueger return Deephaven's Confidential Information and comply with the terms of the Agreement. A copy of Deephaven's correspondence to Krueger is attached as Exhibit 2. Deephaven contemporaneously provided a copy of its letter to Krueger to Sprout Mortgage.

32.     On December 23, 2019, internal counsel to Sprout Mortgage acknowledged receipt and review of Deephaven's letter to Krueger and stated that it would conduct an investigation of its possession of the Confidential Information described in the letter. A copy of Sprout's correspondence to Deephaven is attached as Exhibit 3.

33.     On December 30, 2019, counsel to Deephaven sent separate follow-up correspondence to both Krueger and Sprout requesting a response from Krueger and to learn the

results of Sprout's investigation. Copies of Deephaven's correspondence to Krueger and Sprout are attached as Exhibit 4 and Exhibit 5, respectively.

34.     On January 3, 2020, external counsel to Sprout Mortgage, Michael Iannucci, notified counsel to Deephaven of his representation of both parties in the matter and later informed counsel to Deephaven of his intent to provide a substantive response to Deephaven's December 19, 2019 letter on behalf of both parties not later than January 10, 2020. Neither Krueger nor Sprout has provided a substantive response to Deephaven's December 19, 2019 letter. Krueger has not attempted to deny the material allegations of Deephaven's demand letter nor has he attempted to provide any explanation or justification for his dissemination of Deephaven's Confidential Information.

35.     Rather than responding to Deephaven's letter, Sprout instead issued a press release on January 8, 2020 in which it touted Sprout's hiring of Krueger as Senior Vice President of Correspondent Lending.

36.     To prevent continued irreparable harm from Krueger's violation of his Confidentiality Covenant and Anti-Solicitation Covenant, Deephaven has been compelled to file this lawsuit to obtain injunctive relief restraining Krueger from further unlawful actions.

## COUNT I
## BREACH OF CONTRACT

37.     The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

38.     The Agreement is a valid, binding, and enforceable contract between Krueger and Deephaven.

39.     Krueger has breached the Agreement by misappropriating Deephaven's Confidential Information.

40.     Krueger's employment with Sprout presents an imminent and unavoidable threat that Krueger will violate the obligations imposed on him by the Non-Solicitation Covenant in the Agreement.

41.     As a direct and proximate result of these actions, Deephaven has been damaged and is entitled to its damages and the injunctive relief set out below.

## COUNT II
## UNFAIR AND DECEPTIVE TRADE PRACTICES

42.     Deephaven realleges paragraphs 1 through 42 above and incorporates them herein by reference.

43.     Krueger's acts as alleged above are in commerce and constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

44.     By reason of Krueger's unfair and deceptive trade practices, Deephaven is entitled to damages in an amount in excess of $25,000 to be determined at trial and trebled pursuant to N.C. Gen. Stat. § 75-16, and to reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

45.     Pursuant to North Carolina Rule of Civil Procedure 65, Deephaven is entitled to, and seeks, a temporary restraining order and preliminary injunctive relief prohibiting Krueger from violating the Confidentiality Covenant and the Non-Solicitation Covenant. Unless so enjoined, Krueger's actions will cause irreparable harm to Deephaven and will cause injuries that cannot be adequately compensated by monetary damages. Unless enjoined, the injury to Deephaven is immediate and pressing, and a temporary restraining order and preliminary injunctive relief are necessary to preserve the status quo, to protect Deephaven's rights, and to prevent injury to Deephaven pending the trial of this action. Deephaven is likely to succeed on the merits.

## PRAYER FOR RELIEF

**WHEREFORE**, Deephaven requests the Court:

(i) grant Deephaven a temporary restraining order and preliminary and permanent injunctive relief:

> (a) Prohibiting Krueger from using, disclosing, transferring, duplicating, or reproducing in any form the Confidential Information (as defined in the Agreement), including but not limited to the materials described in Paragraph 27 of this Complaint;

> (b) Requiring Krueger to submit all electronic devices and email accounts containing any information he retained from Deephaven to a third-party for inspection, identification of Deephaven Confidential Information, and removal of such identified information;

> (c) Prohibiting Krueger, directly or in association with others, from soliciting or accepting business from any of the Deephaven's prospective or actual customers through and until June 12, 2020;

(ii) awarding Deephaven compensatory damages; and

(iii) awarding Deephaven such other and further relief as appropriate.

Dated: January 15, 2020

Brian L. Church
N.C. State Bar No. 39581
bchurch@robinsonbradshaw.com

**Robinson, Bradshaw & Hinson, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

*Attorneys for Plaintiff*

**STATE OF NORTH CAROLINA**

**MECKLENBURG COUNTY**

## VERIFICATION

Michael Brenning, being first duly sworn, deposes and says that he is the Chief Production Officer of Deephaven Mortgage, LLC, the plaintiff in the foregoing action, and that he has read the foregoing Verified Complaint and knows the contents thereof, based upon information known to him personally, information set forth in public sources and information provided to him by persons with personal knowledge, and the same is true of his own knowledge, except as to those matters therein stated upon information and belief, and as to those matters he believes them to be true.

Subscribed and Sworn to
before me this _15th_ day
of January 2020.

Notary Public

My Commission Expires: _9/27/2020_

[NOTARIAL SEAL]

```
KATHLEEN  KELLY
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires 9/27/2020
```

12767195

**EXHIBIT 1**



# 2019 Correspondent Sales Compensation Plan

Dear XXX *Ron,*

This Correspondent Sales Compensation Plan (the "Plan") describes the objectives & guidelines under which the Correspondent Sales Team will be compensated and measured throughout the 2019 business year. The Plan will take effect on April 1, 2019. Please note that the purpose of this document is to provide the framework of the Plan and does not constitute a contract of employment or otherwise. The plan is subject to modification or suspension without prior notice in management's sole discretion.

## Objective:

To provide a plan that creates a clear understanding of the growth that Deephaven is seeking as a company in 2019 and how that growth translates to various forms of compensation for the Correspondent Sales Team of which you are a key part. Each salesperson will be provided with a Volume Goal for 2019.

In addition to agreeing to participate in the below 2019 Correspondent Compensation Plan and Annual Incentive Bonus, which makes available to you additional compensation above your base salary, by your signature below you acknowledge and agree to comply with the Supplemental Policies attached hereto as Exhibit A throughout your employment with Deephaven.

## 2019 Correspondent Compensation Plan:

During the 2019 business year, in addition to your base salary, each Correspondent Salesperson will be eligible for Monthly Commissions, and an Annual Incentive Bonus.

## Commission Schedule (April – June):

| Loan Acquisition Type | Sub Type | Commission |
|---|---|---|
| Flow | Near-Prime, Non-Prime, Investor/FN | 8 bps |
| | Expanded Prime | 8 bps |
| Bulk | Mini-Bulk (<$20mm) | 4 bps |
| | Incremental Bulk (Vol>$20mm) | 2 bps |
| Wholesale Referral | Near-Prime, Non-Prime, Investor/FN | 8 bps |
| | Expanded Prime | 8 bps |
| Incentive Agreements | Incentive <= .25% | 6 bps |
| | Incentive > .25% | 4 bps |

www.deephavenmortgage.com
3530 Toringdon Way, Suite 200
Charlotte, NC 28277 USA
+1.800.983.0457 |Toll Free

**Commission Schedule (July – December):**

| Loan Acquisition Type | Sub Type | Commission |
|---|---|---|
| Flow | Near-Prime, Non-Prime, Investor/FN | 8 bps |
| | Expanded Prime | 4 bps |
| Bulk | Mini-Bulk (<$20mm) | 4 bps |
| | Incremental Bulk (Vol>$20mm) | 2 bps |
| Wholesale Referral | Near-Prime, Non-Prime, Investor/FN | 8 bps |
| | Expanded Prime | 4 bps |
| Incentive Agreements | Incentive <= .25% | 6 bps |
| | Incentive > .25% | 4 bps |

**Annual Incentive Bonus Eligibility Rules:**

1. You will be eligible to receive an Annual Incentive Bonus in respect of each calendar year, contingent on your employment through the applicable payment date. Annual bonuses are contingent upon a variety of factors including, without limitation, financial results of the Company, competitive market conditions, and discretionary judgments of individual performance and contributions to business results and objectives.
2. Meet their Annual Incentive Production Threshold (see Addendum)
3. Achieve a minimum of 90% collection on all EPO and EPD payments due from their sellers.

The Annual Incentive Bonus earned will be the sum of quarterly qualifications determined and communicated by the Chief Production Officer each quarter based on achieving certain non-volume targets. The targets will be set by the beginning of each quarter by the Chief Production Officer. The standards and weightings may change each quarter at the discretion of the Chief Production Officer, but are expected to include:

1. Conversion Rate (33.33%)
2. Activation Rate (33.33%)
3. Subjective Ranking (33.33%)

Performance against the above metrics will be measured and communicated quarterly, incentives will be accrued quarterly, but the incentive will not be paid until February of 2020 subject to the Eligibility Rules above.

We are excited about the 2019 business year and the significant impact your contributions will have on our success!

dh·mtg   www.deephavenmortgage.com

**Exhibit A**

**Supplemental Policies**

**Duty to Comply with Company Policies.** Employee shall comply with all duties and requirements as set forth in this Agreement and the Deephaven Mortgage LLC Employee Handbook and all other applicable policies and procedures ("Company Policies"). The Company may modify the Company Policies at any time in its sole discretion.

**Duty of Loyalty.** Employee shall diligently devote appropriate and necessary time to his/her activities on behalf of Company. Employee shall work on a full-time basis only for the Company and will not work, directly or indirectly, for any other person or entity.

**Other Requirements of Employment.** Except as otherwise provided by this Agreement or by written consent of an Officer of the Company, Employee will not, and will not hold him/herself out as having authority to:

(a) Bind or attempt to bind the Company to any written agreement or contract;

(b) Use any name, trade name, trade mark, service mark or logo of the Company for advertising or marketing or other purpose;

(c) Incur any expenses or obligations on behalf of Company unless permitted in the Company

Policies or otherwise fail to comply with requirements therein regarding expenses;

(d) Use any Company e-mail addresses or technology, other than for the performance of Employee's respective duties on behalf of Company and in compliance with the Company Policies.

**Protected Information**

Confidential Information.

      a. Due to the nature of the Employee's employment with the Company, Employee will acquire actual knowledge of the Company's confidential, proprietary and trade secret information, including, but not limited to, information about the Company's business, its products, sales, vendors, suppliers, financial and business operations, its pricing and incentives, underwriting guidelines, strategic and marketing plans, accounts, customer lists, customer data and information (including personally identifiable information), the Company's dealings and relationships with its prospective and actual customers and its employees, processes, methods, training and educational materials, marketing materials, employee compensation (including this Agreement), technology and applications, work-product and all other information not generally known or readily ascertainable that has commercial value to the Company and that gives the Company an advantage over competition (the "Confidential Information").

      b. The Company will suffer irreparable loss and damages if, during employment with the Company and at any time thereafter, Employee, for himself/herself or on behalf of any person, entity or business reveals, discloses, misappropriates, uses, or otherwise attempts to make use of the Confidential Information.

      c. Employee will use the Confidential Information only for performance of his/her business role with and obligations owed to the Company. Employee will not disclose, transfer, duplicate, or reproduce the Confidential Information in any form other than as necessary for completion of tasks in the Employee's role with the Company. Upon the Company's request, Employee will return all originals and copies of documents, information and materials (regardless of format) containing Confidential Information including, without limitation, those prepared by or for Employee.

**dh**·mtg　www.deephavenmortgage.com

**Restrictive Covenants**

### Non-solicitation:

    d.   To protect the Company's Confidential Information and its investment in developing its business and client relationships, commencing as of the date hereof and for a period of six (6) months following termination or cessation of Employee's employment with the Company (the "Restricted Period"), regardless of the reason for termination, and including Employee's voluntary resignation, Employee shall not, directly or in association with others, solicit, attempt to solicit, or accept business related to the sale or purchase of "non-qualified" residential mortgage loans ("Mortgage Loans"), from any of the Company's prospective or actual customers with whom Employee, at any time during the one (1) year period prior to cessation of Employee's employment, (a) covered as Employee's clients; (b) had any substantial or non-incidental contact or communications, or (c) about which Employee obtained or had access to Confidential Information. Notwithstanding the foregoing, should the Employee misappropriate any Confidential Information or information related to the Company's prospective or actual customers, Employee shall be prohibited from soliciting or accepting business from any of the Company's prospective or actual customers during the Restricted Period.

### No-hire:

    e.   In order to protect the Company's Confidential Information and its investment in developing its business, Employee will not, during the Restricted Period, directly or indirectly, solicit, attempt to hire, hire, or cause or assist in the hiring or attempted hiring of, any then current employee, consultant or exclusive independent contractor of the Company for employment, or anyone that has served in such capacity at any time within the one year period immediately prior thereto.

**ACKNLOWLEGDED AND AGREED TO:**

Name: _Ron Krueger_

Signature: _____

Date: _3-26-19_


Counter-executed:

Michael Brenning

Signature: _____

Date: _3-26-19_



## 2019 Individual Correspondent Sales Compensation Plan Addendum – Annual Goals

Dear Ron,

We are excited to provide you with the new 2019 Correspondent Sales Plan. We hope you'll find it easy to understand and full of opportunity for you. This letter shall serve as an Addendum to the 2019 Correspondent Sales Compensation Plan and will detail your specific individual goals as they relate to volume targets and your individual metrics that will drive your Quarterly Incentive Accrual with Annual Incentive Payout Opportunity defined below.

**2019 Volume Goal: $435,000,000**

**2019 Annual Incentive Minimum Volume Threshold:** 90% of Annual Volume Goal

**2019 Annual Incentive Bonus Opportunity: $40,000 ($10,000 per quarter)**

**2019 Individual Performance Metrics – Annual Bonus Opportunity Metrics:**

- Achieve a minimum 70% Activation Ratio Quarterly as tracked in Salesforce
- Achieve a minimum 70% Conversion Ratio as tracked in Salesforce
- Subjective measurement by management

I hereby acknowledge and accept both the 2019 Correspondent Sales Compensation Plan & Addendum by signing below:

Name: _Ron Krueger_

Signature: _(signature)_

Date: _3-26-19_

Counter-executed:

Michael Brenning

Signature: _(signature)_

Date: _7-26-19_

www.deephavenmortgage.com
3530 Toringdon Way, Suite 200
Charlotte, NC 28277 USA
+1.800.983.0457 | Toll Free

**EXHIBIT 2**



bchurch@robinsonbradshaw.com
704.377.8166 : Direct Phone
704.339.3466 : Direct Fax

December 19, 2019

**VIA EMAIL AND FEDERAL EXPRESS**

Ron Krueger
33036 Embassy Avenue
Temecula, CA 92592
rfkinnb@gmail.com

      Re:    Misappropriation of Trade Secrets from and Breach of your Confidentiality
            Agreement with Deephaven Mortgage LLC ("Deephaven" or the "Company")

Dear Mr. Krueger:

Our firm represents Deephaven, your former employer. We are writing to you about the important obligations you owe to Deephaven under the statutory law of California and North Carolina and the Supplemental Policies to the 2019 Correspondent Sales Compensation Plan with Deephaven (the "Confidentiality Agreement") and your breach of those obligations.

As you are aware and Deephaven discussed with you, your job as Vice President of Client Development extensively exposed you to the confidential and trade secret information of Deephaven. Indeed, many of the client relationships for which you were responsible at Deephaven were developed by the Company and provided to you when you began your employment. You agreed in the Confidentiality Agreement that you would use Deephaven's confidential information only for the performance of your business role with and obligations owed to the Company. I enclose a copy of the Confidentiality Agreement for your reference.

You resigned your employment on Thursday, December 12, 2019 and informed Deephaven that you were going to work for a competitor, Sprout Mortgage. Yet following your departure, Deephaven discovered that you had used its email system to forward to your personal email dozens of sensitive company documents—many of which contained information outside the scope of your job duties. Having reviewed this information, Deephaven has been unable to conceive of any legitimate business purpose for your having done so, but instead can conclude only that you intend to use this proprietary, trade secret information in direct competition with Deephaven in violation of your Confidentiality Agreement and applicable law.

Among the many types of documents you sent to your personal email address outside Deephaven's systems were:

12699510

**ROBINSON, BRADSHAW & HINSON, P.A. : robinsonbradshaw.com**
Charlotte Office : 101 N. Tryon St., Ste. 1900, Charlotte, NC 28246 : 704.377.2536

Case 3:20-cv-00047-RJC-DCK    Document 1-1    Filed 01/23/20    Page 25 of 36

- Loan pool pricing information proprietary to Deephaven, including the supporting bid tapes;
- Company-wide lists of clients, loan originators, and their contact information and other valuable client information;
- Detailed information concerning Deephaven's current sales pipeline reports and production forecasts for 2020 regarding acquisition volume and Deephaven's actual production in 2019;
- Seller scorecards containing sensitive information, unique to Deephaven, about lender performance;
- Extensive notes from Deephaven clients reflecting confidential client communications and sales strategies—including notes from meetings in which you did not participate and had no basis to know or discover such information; and
- Confidential, proprietary and valuable information wrongfully copied from Deephaven's data and CRM systems.

This list is not exhaustive, but is illustrative of the types of sensitive Company information that you misappropriated and remain in your possession. This information, particularly when considered collectively, would allow you and any subsequent employer to compete unfairly and unlawfully with Deephaven. Your retention and/or use of this information violates the Confidentiality Agreement and the Trade Secrets Protection Act.

You are further reminded that the Confidentiality Agreement contains a customer non-solicitation agreement that is narrowly drawn to protect Deephaven's interest in its trade secrets. Your misappropriation of the trade secrets and confidential information as set forth above now prohibit you from "soliciting or accepting business from any of the Company's prospective or actual customers" for six months. Your work on behalf of Sprout may well violate this restriction, particularly in light of the extensive confidential information you took from Deephaven prior to your departure.

Deephaven demands that you immediately CEASE AND DESIST all wrongful conduct, whether such conduct violates the Confidentiality Agreement or Deephaven's other statutory rights. In particular, you must not use, disclose, or possess Deephaven's confidential or trade secret information and under no circumstances are you permitted to share such information with any other person or entity.

Deephaven is entitled to enforce its rights under the Confidentiality Agreement, including to obtain injunctive relief against your present employment and to recover damages from you for business that it has lost from your unlawful competition. Within five (5) days of your receipt of this letter, you must: (1) return to me any and all Deephaven information and materials, including all confidential information in your possession; (2) provide a personal attestation that you have returned all of Deephaven's confidential information; (3) agree to participate in a forensic examination of all of your email accounts and electronic devices to search for and

12699510

permanently remove any Deephaven information or materials, to take place before January 3, 2020; (4) produce documentation concerning your present employment and its scope, including your employment agreement and job description with Sprout; (5) provide a full accounting of your contact with and work for Sprout since your separation from Deephaven; and (6) deliver a full accounting of your contact with any Deephaven client since your resignation from employment, including copies of all call logs, emails, text or social media messages or other communications with Deephaven clients on behalf of Sprout Mortgage or otherwise

Once we receive this information, Deephaven will determine its next steps and expressly reserves its rights to pursue all available legal remedies to redress your conduct. Given the likelihood that litigation will result from your actions, you are hereby placed on notice to take immediate steps to preserve all evidence related to this matter.

I look forward to hearing from you or your attorney at your earliest opportunity.

Sincerely,

ROBINSON, BRADSHAW & HINSON, P.A.

Brian L. Church

BLC/dkh
Enclosure

cc:    F.M. Pinckney III, General Counsel, Deephaven Mortgage (*via e-mail*)
       Michael Strauss, Chief Executive Officer, Recovco Mortgage Management, LLC (*via e-mail*)
       Shea Pallante, Chief Production Officer, Recovco Mortgage Management, LLC (*via e-mail*)
       Recovco Mortgage Management, LLC (*via FedEx to Registered Agent*)

12699510

## Exhibit A

### Supplemental Policies

**Duty to Comply with Company Policies.** Employee shall comply with all duties and requirements as set forth in this Agreement and the Deephaven Mortgage LLC Employee Handbook and all other applicable policies and procedures ("Company Policies"). The Company may modify the Company Policies at any time in its sole discretion.

**Duty of Loyalty.** Employee shall diligently devote appropriate and necessary time to his/her activities on behalf of Company. Employee shall work on a full-time basis only for the Company and will not work, directly or indirectly, for any other person or entity.

**Other Requirements of Employment.** Except as otherwise provided by this Agreement or by written consent of an Officer of the Company, Employee will not, and will not hold him/herself out as having authority to:

(a) Bind or attempt to bind the Company to any written agreement or contract;

(b) Use any name, trade name, trade mark, service mark or logo of the Company for advertising or marketing or other purpose;

(c) Incur any expenses or obligations on behalf of Company unless permitted in the Company

Policies or otherwise fail to comply with requirements therein regarding expenses;

(d) Use any Company e-mail addresses or technology, other than for the performance of Employee's respective duties on behalf of Company and in compliance with the Company Policies.

**Protected Information**

### Confidential Information.

a. Due to the nature of the Employee's employment with the Company, Employee will acquire actual knowledge of the Company's confidential, proprietary and trade secret information, including, but not limited to, information about the Company's business, its products, sales, vendors, suppliers, financial and business operations, its pricing and incentives, underwriting guidelines, strategic and marketing plans, accounts, customer lists, customer data and information (including personally identifiable information), the Company's dealings and relationships with its prospective and actual customers and its employees, processes, methods, training and educational materials, marketing materials, employee compensation (including this Agreement), technology and applications, work-product and all other information not generally known or readily ascertainable that has commercial value to the Company and that gives the Company an advantage over competition (the "Confidential Information").

b. The Company will suffer irreparable loss and damages if, during employment with the Company and at any time thereafter, Employee, for himself/herself or on behalf of any person, entity or business reveals, discloses, misappropriates, uses, or otherwise attempts to make use of the Confidential Information.

c. Employee will use the Confidential Information only for performance of his/her business role with and obligations owed to the Company. Employee will not disclose, transfer, duplicate, or reproduce the Confidential Information in any form other than as necessary for completion of tasks in the Employee's role with the Company. Upon the Company's request, Employee will return all originals and copies of documents, information and materials (regardless of format) containing Confidential Information including, without limitation, those prepared by or for Employee.

dh·mtg   www.deephavenmortgage.com

**Restrictive Covenants**

Non-solicitation:

    d.   To protect the Company's Confidential Information and its investment in developing its business and client relationships, commencing as of the date hereof and for a period of six (6) months following termination or cessation of Employee's employment with the Company (the "Restricted Period"), regardless of the reason for termination, and including Employee's voluntary resignation, Employee shall not, directly or in association with others, solicit, attempt to solicit, or accept business related to the sale or purchase of "non-qualified" residential mortgage loans ("Mortgage Loans"), from any of the Company's prospective or actual customers with whom Employee, at any time during the one (1) year period prior to cessation of Employee's employment, (a) covered as Employee's clients; (b) had any substantial or non-incidental contact or communications, or (c) about which Employee obtained or had access to Confidential Information. Notwithstanding the foregoing, should the Employee misappropriate any Confidential Information or information related to the Company's prospective or actual customers, Employee shall be prohibited from soliciting or accepting business from any of the Company's prospective or actual customers during the Restricted Period.

No-hire:

    e.   In order to protect the Company's Confidential Information and its investment in developing its business, Employee will not, during the Restricted Period, directly or indirectly, solicit, attempt to hire, hire, or cause or assist in the hiring or attempted hiring of, any then current employee, consultant or exclusive independent contractor of the Company for employment, or anyone that has served in such capacity at any time within the one year period immediately prior thereto.

**ACKNLOWLEGDED AND AGREED TO:**

Name: _Ron Krueger_

Signature: _____

Date: _3-26-19_

Counter-executed:

Michael Brenning

Signature: _____

Date: _3-26-19_

**EXHIBIT 3**

 **Sprout Mortgage**

Shannon Leight, Esq.
General Counsel / Chief Compliance Officer
Shannon.Leight@sproutmortgage.com

December 23, 2019

Brian L. Church, Esq.
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28248
bchurch@robinsonbradshaw.com

Re: Demand Letter to Ron Krueger

Dear Attorney Church:

Sprout Mortgage, LLC ("Sprout") is in receipt of your demand letter to Ron Krueger dated December 19, 2019 alleging potential misappropriation of certain trade secrets and confidential information ("Confidential Information") of your client, Deephaven Mortgage, LLC ("Deephaven).

Sprout appreciates any concern Deephaven may have regarding the potential misuse of its Confidential Information. Please be advised that Sprout's policy is to prevent the improper use by Sprout of any intellectual property belonging to a competitor. Although Sprout does not believe it has received or is in possession of any Confidential Information belonging to Deephaven, Sprout has not yet conducted an investigation and does not have sufficient knowledge to confirm this belief. Nevertheless, Sprout will conduct an investigation during the week of December 23, 2019 to determine if it has received or is in possession of Confidential Information belonging to Deephaven.

Upon conclusion of its investigation, Sprout will report its findings to you and we can discuss next steps, if any. In the meantime, please feel free to contact me if you have any questions.

Sincerely,

Shannon Leight

**90 Merrick Avenue, East Meadow, NY 11554**
**800-753-3300**

**EXHIBIT 4**

bchurch@robinsonbradshaw.com
704.377.8166 : Direct Phone
704.339.3466 : Direct Fax

December 30, 2019

**VIA EMAIL AND FEDERAL EXPRESS**

Ron Krueger
33036 Embassy Avenue
Temecula, CA 92592
rfkinnb@gmail.com

   Re:  Misappropriation of Trade Secrets from and Breach of your Confidentiality
       Agreement with Deephaven Mortgage LLC ("Deephaven" or the "Company")

Dear Mr. Krueger:

   I am writing to follow up on my December 19, 2019 letter to you regarding, your violation of your Confidentiality Agreement with Deephaven and your current employment with Sprout Mortgage. My earlier letter to you contained many specific and serious allegations against you concerning your misappropriation of Deephaven's confidential and trade secret information. Your failure to acknowledge these allegations, let alone answer or deny them, has heightened Deephaven's concerns about your past conduct and your future intentions.

   Deephaven insists that you act immediately to remedy your misconduct. You must: (1) return to me any and all Deephaven information and materials, including all confidential information in your possession; (2) provide a personal attestation that you have returned all of Deephaven's confidential information; (3) agree to participate in a forensic examination of all of your email accounts and electronic devices to search for and permanently remove any Deephaven information or materials, to take place before January 3, 2020; (4) produce documentation concerning your present employment and its scope, including your employment agreement and job description with Sprout; (5) provide a full accounting of your contact with and work for Sprout since your separation from Deephaven; and (6) deliver a full accounting of your contact with any Deephaven client since your resignation from employment, including copies of all call logs, emails, text or social media messages or other communications with Deephaven clients on behalf of Sprout Mortgage or otherwise.

   Please do not mistake Deephaven's restraint during this holiday season as an indication of its disinterest in rectifying the conduct described in my December 19, 2019 letter. It is imperative that you or your attorney contact me on or before Friday, January 3, 2020 with the information requested above.

December 30, 2019
Page 2

Sincerely,

ROBINSON, BRADSHAW & HINSON, P.A.

*Bun L Church*

Brian L. Church

BLC/dkh

cc:    F.M. Pinckney III, General Counsel, Deephaven Mortgage (*via e-mail*)

12735125

**EXHIBIT 5**

R O B I N S O N
———————
B R A D S H A W

December 30, 2019

bchurch@robinsonbradshaw.com
704.377.8166 : Direct Phone
704.339.3466 : Direct Fax

**VIA EMAIL**

Shannon Leight
General Counsel/Chief Compliance Officer
Sprout Mortgage
90 Merrick Avenue
East Meadow, NY 11554
Shannon.Leight@sproutmortgage.com

     Re:    Deephaven Mortgage LLC and Ron Krueger

Dear Ms. Leight:

    I am writing to follow up on your December 23, 2019 letter to me acknowledging Sprout Mortgage's receipt and review of Deephaven's demand letter to Mr. Kreuger. Your letter stated that Sprout intended last week to conduct an investigation into the Deephaven information that Mr. Kreuger retained following his resignation from employment with Deephaven. I ask that you please contact me with the results of that investigation by the end of this week.

    To the extent you are in contact with Mr. Kreuger about this matter, I also ask you to let him know that I expected to but did not hear from him or his attorney in response to Deephaven's demand. His failure to acknowledge and address these issues has only added to Deephaven's concerns about his present employment with Sprout Mortgage. I am contemporaneously sending him a reminder to do so.

    I look forward to hearing from you at your earliest opportunity and not later than this Friday, January 3.

    With best regards.

           Sincerely,

           ROBINSON, BRADSHAW & HINSON, P.A.

           Brian L. Church

BLC/dkh
cc:    F.M. Pinckney III, General Counsel, Deephaven Mortgage (*via e-mail*)

**ROBINSON, BRADSHAW & HINSON, P.A. : robinsonbradshaw.com**
Charlotte Office : 101 N. Tryon St., Ste. 1900, Charlotte, NC 28246 : 704.377.2536